do pay attention to the lighting system that we have. I believe both advocates have been before us before. With that, I will get started by calling the case, Philip Turner v. Oliver. Mr. Wade, I believe it is. May it please the court. The legal issue in this case is whether a complaint states the claim under either federal or state law when it alleges that a district attorney, because a principal has taken the Fifth Amendment and because there is a lot of personal animosity between the district attorney and the principal, causes the principal to be fired from his job. The substance of Judge Wingate's opinion was that he hates it and doesn't think it's right, but nevertheless, that it doesn't state a cause of action. Whatever else might be in dispute in the case, there's no dispute that there was lots of malice, ill will, and probably hatred between the district attorney and the school principal. It arose out of the principal suspending the district attorney's child from school and disciplining the child. It didn't stop with that. The district attorney came up to the school, berated the principal, continued to berate the principal, and the principal had the district attorney escorted off of school property. Mr. Wade, you've done a good job both sides in the briefing. To present the facts to us, I know you want to emphasize certain things, but get to the claims here. Obviously, Judge Wingate didn't accept them. I don't know how to read his opinion that he was making the conclusionary, stating the impressions that you gave him, but he certainly said there was no claim. Tell me about the Fifth Amendment claim. How can you make the claim in your complaint that he asserted the Fifth Amendment in this investigation? How can you turn that into a 1983 claim that you have? What's the connection between that and what's your best case that would allow that sort of jump from what happened in his assertion of constitutional right and what you say the defendant did? Your Honor, against the legal basis of the claim, the best case stating the legal basis of the claim is Gardner v. Broderick, which is cited on page 6 of our reply brief. The basic holding of Gardner v. Broderick is that it violates the United States Constitution to fire a police officer because a police officer took the Fifth Amendment and refused to testify at a grand jury hearing. That's precisely what the allegation is that happened in this case. When the district attorney told the principal that you're a possible defendant, the principal invoked the Fifth Amendment, refused to testify, and then the district attorney indicated she's upset about that because she goes to the grand jury and gets an indictment for the alleged offense of accessory for the fact which, according to our complaint, couldn't have been anything other than taking the Fifth Amendment because there's nothing he's done to be an accessory after the fact. He wasn't present at the incident. He didn't help the person escape. There's no way he fell within any criminal statute. So then he goes to the school board about two months after the indictment and tells the school board this is a valid indictment. It's not a valid indictment. A valid indictment would mean an honest indictment, something based on some honest reason, not an indictment based on exercising a constitutional right. Let me take the two events you're talking about. You acknowledge in your briefing, do you not, that there's absolute immunity for what happened at the grand jury? Yes, sir. It's not about the grand jury. Okay, so then when you take what happened later, it seems to me you still are taking this back to the grand jury in your allegation that it's still tied to what happened in the grand jury. It seems to me the first hurdle you have to get over is that qualified immunity, even when it would apply in that context of speaking to the school board or the board of trustees or whatever they call it, what is your best case that qualified immunity would apply in the setting of making these statements to a school board? Well, Your Honor, that's our point. We believe it does not apply. We think it's exactly like the situation that cited the case. I guess it's the reverse, that it would not apply because our situations of qualified immunity apply when an official to whom it would otherwise apply is speaking to the press. Your Honor, I'm hard of hearing. I have a little trouble with what Your Honor is saying, but the reason it doesn't apply, and I want to cite this case to the court. It's cited on page 4. It's Judge Davis' case. It's the Jones case. The first step in qualified immunity is that this person, the district attorney in this case, is performing some discretionary act required by law, that he's doing some act the law required him to do. In your case, Judge Davis, the Jones case, this was a case where a public official was sued, a city official, a city planning officer was sued, and Your Honor wrote the opinion holding that qualified immunity never arose because he wasn't performing any discretionary function that the law required him to perform. The district attorney is no different than any other citizen so far as going out to a school board and trying to get somebody fired. That's not a discretionary function, just like it wasn't in the case that Judge Davis had in another follow-up case, the Swinton case, the same thing. You've got to be performing some function that the law required you to perform and performing a discretionary function. Well, the function of the DA is to prosecute cases and a variety of other things. It's already been held, and including in that is to report to the public. This is reporting to a part of the public, the school board, in a matter of relevance to them. It is unfortunate the possibility that there was this animosity there, but nonetheless it is distinguished for me. Why is reporting to these board members legally different than reporting to the public at large about what happened in the grand jury? Well, Your Honor, because the statute defines what the duties of a district attorney are. You know better than anybody what a district attorney does in Mississippi is prosecute criminal cases. The statute says he can also prosecute civil cases for the state, but those are his statutory duties. There are no other duties. If he's doing something outside of those duties, he's not doing anything that the law required him to do. It's exactly like these situations. This was a city official that Judge Davis was writing about in the Jones case. He was a public official, but he wasn't required under the law to file plats except where the landowner requested. This court held that he was acting outside of his duties. Mr. Wood, let me ask you this. When the statement was made, the indictment had already been returned? Yes, the indictment had been returned. However, Your Honor, taking the facts in the light most favorable to the plaintiff, there's absolutely no basis for it. You look at the indictment. If you file a motion to dismiss that indictment with civil rules applied, it wouldn't have stated a claim. It just says he's an accessory after the fact. The only thing he's done is to take the Fifth Amendment, so it cannot be a crime to take the Fifth Amendment after the DA said you're a possible defendant. But the statement was that a valid indictment has been returned. Was that an untrue statement? It is to me, Your Honor, because valid means honest, having a basis in law, an honest... And she knows that, in fact, it's not... When we talk about a valid indictment, we're talking about a district attorney, disinterested district attorney, goes and presents a case to a grand jury. In this case, what we're talking about, a DA, she's the witness. It's not any indication there's any law enforcement witness. It's just that she's offended because he takes the Fifth Amendment at this probable cause hearing. So when she says it's a valid... I can understand why the DA would have been upset about her child getting expelled from school or suspended, but why would you draw the inference that the DA would get upset because he took the Fifth Amendment? Well, because he'd indicted her for that. She goes and indicts him, but the indictment says accessory after the fact. If it's not for taking the Fifth Amendment, why is the principal indicted? What does it mean, is it accessory after the fact, Your Honor, when somebody's committed a crime and you help them escape or you hinder the prosecution in some way? But what he's done is exercised a constitutional right which under the Supreme Court's decision in this broader case, he has the right to do and cannot be punished for doing that. But your theory is that the DA was offended because of that statement is the reason she went to the school board and reported that a valid indictment had been entered. Yes, that's what we allege. Of course, that's all subject to proof. That's subject to evidence. She would know why, but the reason for the underlying malice or ill will is demonstrated by the fact she went and got this baseless indictment, which ultimately, of course, when the Attorney General got a hold of it, they dismissed as nothing to it. I mean, the general rule is, though, that if you make a truthful statement, that's the end of it. You can't be held responsible for that, huh? Well, that's the issue, is whether it was a truthful statement, Your Honor. The word valid indicates that this is legitimate, honest, legally sound. That's what the implication of that is. We don't know exactly what discovery would show us exactly what she's going to claim she meant by that, but indictment to me means you have an impartial prosecutor who just presents the evidence, the grand jury, based on testimony of witnesses. There's no indication here there were any witnesses. It's just the fact that he's taken the Fifth Amendment. So she goes to the school board and gets in power. Are you conflating valid with successful? That's a great question, Your Honor. No, sir. I think there could be plenty of valid indictments that are not successful. No, sir. I would not accompany that. I would say valid would be one that's honest and a good faith belief that he's committed some crime. That would be an honest indictment. What's your best authority for the proposition that valid is defined along the lines? I don't have any cases on that, Your Honor. I don't have any cases I can say that. All I can say is we have to draw all inferences in favor of the plaintiff at this point, and we have to go get an... To me, we're entitled to go forward from summary judgment and say, what in the world did you mean by saying that he's an accessory after the fact and that this indictment was valid? And I think there's indications that inferences can be drawn from the circuit judge's removing this district attorney from the case and from the fact that the Attorney General null-processed the case. It has to be a really weak case. As Your Honor knows, Judge Southwood, for a district attorney to null-process it, it has to be a really flimsy case for that to happen, and that's what happened when the Attorney General got a hold of it. Your Honor, let me move to the second issue, which is the state law claim of malicious interference. The argument on malicious interference is that the complaint is not detailed enough. To me, that's the whole factual argument. There is no... These various United States Supreme Court cases that we've had, there's no such thing as a Supreme Court case saying a case is going to be dismissed on the pleadings because the facts aren't detailed enough. The issue is whether it states a plausible claim. Does it state a plausible claim that acting out of malice, the district attorney got him fired from his job under state law? I might say that the entire defense argument seems to be that you didn't mechanically set out the elements of a malicious interference claim, and we think that's defeated, Your Honor, by the Saroma case from the United States Supreme Court, which is cited in the briefs, and which holds that you don't have to plead a prima facie case. That's not something you have to put... in an employment discrimination case. But all you have to do is to plead enough facts that it's plausible that the district attorney got him fired from his job for bad faith reasons. Your Honor, there are all these various United States Supreme Court cases that have discussed what's necessary to state a claim, but none of them, there's just no such thing as a case that says we're going to dismiss a claim because we don't think it's factually detailed enough. That's not the basis for dismissal. The question is whether it states a claim. And the district attorney has full knowledge about what's being claimed. The purpose of the whole pleadings thing is supposed to be to give notice, and she certainly had noticed that we were making the claim that out of personal animosity and ill will, she went up to the school board and got him fired. And that's all that we have to show. If factual detail was a test, then the Iqbal case, there was a world of factual detail in that case, but the Supreme Court said it was not plausible. The allegations are not plausible. It is certainly plausible that the district attorney is angry at the school principal and wants him fired from the job for the same reason she warned him and died, and for those reasons that it does state a claim. I might say, Your Honor, that the Twomley case, you know, for the basic proposition that it must be plausible, cited the Seroma case and distinguished it, but Seroma has not been overruled. And we think the pleading requirement that the defendant's trying to rely on is just not consistent with United States Supreme Court precedence on what's necessary to state a claim. All right, Mr. Twomley. Thank you. I thank you, Your Honor. If there's anything further, Your Honor, I'll sit down. All right, we'll hear your rebuttal. Your turn, Mr. Call. Thank you, Your Honor. May it please the Court. I'm going to do away with some of my remarks today and try to answer some of the questions of the Court, but first I would like to say that there's been no showing in this case, in this appeal, that the district court departed from any standard of review or that it departed or failed to apply any substantive standard of law. What we have here is basically conclusions by the plaintiff appellant in the case in the district court, and it's now the case here on appeal. Before I turn to some of the questions, I would just like to say that really there are, I think, two points that are straightforward and that are dispositive in this appeal, and that is first, the claim that there was some relationship with the Fifth Amendment, a 1983 case based on the Fifth Amendment, is without any arguable merit whatsoever. The Fifth Amendment is an important right. There's no question about that, but in the context of Section 1983 litigation, it is a very, very limited right, and that right depends on there being a coercion of an incriminating testimony or statement, first, that second is used in a trial against a criminal defendant. The Round Rock case that I think Judge Southwood was a member of the panel plainly indicates that those are the requirements for a Section 1983 case related to the Fifth Amendment. That did not happen in this case. In this case, the school resource officer choked a student, and pursuant to state law, there was a state law where there is an allegation against a school official requires a probable cause hearing that is before a circuit judge with sworn witnesses and testimony and so on. The district attorney subpoenaed several witnesses, including the principal of the school, and when asked to testify, the principal of the school invoked the Fifth Amendment. The district attorney did not, at that point, force any testimony, did not take a statement, honored the invocation, but does that mean that invoking the Fifth Amendment is some kind of cousin of a get-out-of-jail-free card? No, it does not. Investigations can continue past the point of the invocation, but as far as the Fifth Amendment is concerned, she honored it. There could be no claim based on Section 1983. The second point is that with respect to the intentional interference with contract claim, the district court held that the base allegation of that claim was not really sufficient to meet IGBAL standards, and I submit that that is the correct disposition there. But the second point that the district court made in the opinion is that that state tort requires, as an essential element, a showing that the interference is for an unlawful purpose and that it is made without any justification or right on the part of the defendant, which is equivalent to malice. Here, in this case, the communication of a public record, an indictment that was returned by a grand jury, was in existence, and it was in existence at the time there was any communication to the school board. And may I say, just to clear the record on this point that I've been misled on, the communication, I began to wonder, what was the communication? What were the circumstances regarding the communication? Well, in the . . . in going through the files in prep for this case, I found an amended notice of claim letter to the State Torts Claims Board dated December 30, 2020, that's six months prior to the filing of the suit in this case. What you're referring to is in the record of this case? It's not in the record, Your Honor. And I'll refrain from . . . It is a matter . . . Well, if you're telling us it because you think it's relevant, then it needs to be in the record, I would think. That's correct, Your Honor. And we did not discover this in a different file of the State Tort Claim. All right. So I'll refrain from mentioning that. But there was a . . . If you take the fact that there wasn't a communication to the school district, it was not made without justification because there was actually, in fact, a grand jury indictment that existed. And what happened after the fact, down the road, in absolute immunity cases and qualified immunity cases, what you're looking at is things that occurred at the time of the alleged misconduct. And at the time of the alleged misconduct, which we submit was not misconduct at all, there was a grand jury indictment. That's not an egg-ball question. That's unrefuted on the record. The record reflects that. And the district court also pointed out that the Restatement of Tort, Section 772, states that you cannot have interference with contract if what you are . . . if the message or communication is truthful information. Now, you can argue whatever. It was not valid this or that. But at the time, there was a grand jury indictment. And I would say that also that after the briefing in this case was completed, the Court of Appeals actually . . . the Mississippi Court of Appeals actually adopted Section 772 in a case, and I cannot remember the name of it off the top of my head. It was Cromwell, I think, the Cromwell case, in early 2020. So with respect to those two claims, the only claims that are left in this, is the Section 1983 claim based on a relation to the Fifth Amendment and the intentional interference with contract. Both of those claims, there's no arguable basis for either of those claims. And I don't believe, frankly, that you can defeat those principles of law, in fact, here, based on conclusory allegations, which is at the heart of it, is what this case was built on. I would like to say, with respect to some of the questions that the panel answered, and Judge Southwick asked about the Fifth Amendment, the Round Lock case is directly on point with what is required for the Fifth Amendment. And that case is unrefuted by the appellant. The Round Lock case is cited in our brief. The question that Judge Davis asked concerning the Cherry case, I'm not going to be critical of the Cherry case because Your Honor authored that opinion, but the other case that is cited, the Red Rock, not Red Rock, but the Texas City case, I think it could be argued that that case is very problematical because, in essence, what that case did is that it took alleged noncompliance with a state job description and used that, basically, to do away with any analysis that is mandated by the Supreme Court for qualified immunity. So, the Supreme Court has not said that we have a three-step analysis. We have a two-step analysis, and there's not a first step that says we need to scrutinize state job descriptions in detail before we ever get to the immunity question. It's a draconian denial of a federal right to a qualified immunity analysis. So, I would just . . . Let me make sure I know where that fits into your argument. Are you saying there cannot be an issue if the district attorney does something that qualified immunity is going to apply? We will go through the two-step process? I mean, the argument here is that what she did in front of the school board doesn't fit within the proper duties. I mean, that is what our Cherry Knoll case versus Jones case held, that it needs to be within the scope of discretionary duties, spent a lot of time with family over the holidays, went to a lot of playgrounds with a six-year-old. If a district attorney does something out there at the playground and says something, is qualified immunity going to apply to it? There's got to be some issue of getting the public official into the qualified immunity universe, doesn't there? Yes, sir. I was suggesting, Your Honor, that in the Meacham case cited in our brief, this court said, based on what the Supreme Court had said, it said in numerous cases that we should think twice before denying qualified immunity. I was just suggesting to the court that to take . . . to make what happens with respect to a state court job description be a draconian denial of any analysis under the qualified immunity standards is something that I think could be argued as problematical. Now, with respect to the exact question here, there's no case and no authority, and none has been cited that said that the district attorney was somehow prohibited in her duties from, let's assume, talking to the school district about what had occurred. Let me ask you this. Is there anything in the record that suggests the DA is a formal or informal legal advisor to the school board? Nothing in the record. Nothing whatsoever. Not alleged and not in the record. No connection between the . . . The decision to discharge Mr. Turner was the school board's decision. That's in the record. There's no allegation that there was any type of connection between the district attorney and the school board. There would be some type of conspiracy or what have you. The idea that the Supreme Court in the Buckley case said when it denied the district attorney absolute immunity for statements made to the press, it did say, well, you would be entitled to qualified immunity for that. We've cited the text in Buckley that says the communications could serve a vital public interest. We've also cited the state court decisions in the Stewart case. What was the public interest that . . . I'm sorry, Your Honor? What was the public interest that the DA was furthering by initiating this conversation with the school board? Well, that's something that I cannot comment on because it's not in the record. That's what Judge Southwick indicated that I could not advise the panel on. There's an allegation in the complaint and that's what we're looking at. You don't have any position as to what the complaint is indicating here. All it states is that the district attorney informed the school district, the school board, or whatever it is. It does seem to me that needs to be within either . . . that needs to be within the role of a district attorney to be doing that and not the role of a private citizen to be doing that if you are asserting qualified immunity for those statements. Well, was the DA just a private citizen aware of the events speaking to the school board? Is that . . . are you willing to go on that or can you say more than that? I can take the position, Your Honor, that whether she spoke to the school district or communicated in some other fashion, any of that would be entitled to qualified immunity and there's nothing that prohibits an elected official like the district attorney from doing a variety of things that there's certainly . . . if you were the school board and you were interested in what had happened and who the principal was involved, that's a communication to a public body that's got a direct interest in the circumstances and in the situation. Does the DA normally talk to the employers of citizens who have been indicted? I don't know that, Your Honor. I don't know. That goes to what actually happened in this case and I can't comment on that. My impression is the typical position of a DA is not only to not initiate these dialogues but to specifically refuse to comment on pending cases. So you see why this might seem unusual to an outside observer. I think that there's no evidence in the record, I don't think that she initiated conversations one way or the other. I don't think the record . . . Well, somebody initiated it, right? Either the school board asked her what's going on with our principal or she took it upon herself to affirmatively inform the school board and you're saying the record, as far as you know, is silent on this issue? I don't think the record reflects that and I don't think it really, from a standpoint of qualified immunity . . . I think, I forget the passage, but I think the complaint essentially leaves the impression anyway. The complaint leaves the impression that she's the initiator. I don't think the record says that she talked to the school district or talked to the school board or had conversations. I don't believe the complaint specifies one way or the other. I think it's the fact . . . I think the complaint, the second amended complaint, complains about the fact of communication basically and not who initiated or who did not initiate. I think the fact of communication, there's no prohibition in a case and there's no prohibition in state law that would prohibit a district attorney armed with a presumptively valid grand jury indictment from discussing the matter with the school board. So . . . Well, let me . . . Are we looking at again is the complaint and the allegations in the complaint? Oliver carried out further animosity by speaking to the school district, said plaintiff had been validly indicted. Oliver made this claim for the purpose of getting plaintiff terminated. So there's a lot not said there. But picking up on what Judge Ho was saying, it would support that the district attorney was not asked by the school board. She initiated this. She wanted to get him fired. That's basically what that paragraph says. And you're saying qualified immunity takes care of that? It's our position, Your Honor. Yes, qualified immunity would apply. There's no problem with her job duties on that because there's no prohibition. And she has a grand jury indictment. Okay, but you're not saying that her job duties authorize her to engage in admitted defamation, for example? I'm sorry, Your Honor. What if . . . Let's just stipulate a fact pattern, not this case, hypothetical. A DA engages in defamation. I'm sorry. I couldn't understand. Defamation. Defamation. The defamation case, the district attorney historically would . . . The slander case . . . We're not talking about in court. The slander case . . . The slander allegation here was dismissed because of failure to . . . Imagine a district attorney that simply walks around town claiming that a citizen who's entirely innocent is a rapist. I'm talking about just classic defamation. Are you saying that that's . . . No, sir. . . . somehow subject to the analysis you're proposing? No, sir. I don't think so. I think that confined to the facts, and the facts are not only in what's in the complaint in this matter because there were a number of exhibits attached and the district court took into account what was stated in the motion pleadings. Some things weren't rebutted in the motion. Just so I can make sure I understand your position, are you saying that defamation . . . just like admitted grotesque defamation, that you would find liability? You're just saying this case is different? Or are you saying that defamation would also be subject to QI? I don't know how to answer that, Your Honor, because the defamation was dismissed by the district court because . . . I'm talking about a hypothetical. I'm not talking about this case, sir. Okay. Imagine a hypothetical where a district attorney goes around town accusing a citizen who's entirely innocent of rape. That would be problematical, sir. Yes, sir. You're saying that does not . . . This is a hypothetical. You keep saying it's not a hypothetical. This is a hypothetical. It has nothing to do with this case. We're trying to determine the reach of your position. Are you saying that your QI analysis would extend to that DA or would not extend to that DA? The Buckley case indicates that statements to the public concerning criminal proceedings would be entitled to qualified immunity. The Buckley case is pretty clear that communications to the public is part of the duties of a prosecutor. So . . . So you're saying that my defamation hypo would still be subject to QI analysis, but QI would be overcome because that was such . . . Yes, sir. . . . behavior? Yes. Fair enough. In closing comments, we took some of your time. I'll give you . . . If you need it, we've got some. Well, I think I'm done, Your Honor. All right, Mr. Cole. Thank you. I didn't realize I'd gone overact, actually. Thank you. Your Honor, first, regarding Judge Ho's questions about defamation, Your Honor, there's a Mississippi statute that's quoted in the briefs that says an official is not acting in the course and scope of employment if his statements are defamatory or constitute malice, and there's several United States . . . I mean, Mississippi Supreme Court decisions, Jones case is one, but malicious interference with contract by definition involves malice, so he's not acting as a matter of state law. He was not acting within the course and scope of his employment  Now, regarding qualified immunity, Your Honor, the whole reason, as I understand it, the whole basis for qualified immunity as long as we've been here and as long as we've had it, has been that it has the assumption that an official is required by law. He has a duty required by law to carry out certain discretionary functions. The classical example, of course, is a police officer. That's 90% of the cases. The law requires him to make arrests. He has to make split-second decisions. The law requires him to make those decisions, and therefore, he is entitled to qualified immunity. We have the opposite situation here. The district attorney is in no different position than anybody that goes up to the school board to try to get a school employee fired, just like any other citizen. It's not within any discretionary duty that's assigned to the district attorney by statute. The district attorney's duty is to prosecute crimes and present cases to the grand jury, and theoretically, Judge Southwick, you know this never happens, but theoretically, to prosecute civil cases. Those are the statutory duties. There are no other duties of a district attorney. The district attorney is just like any other citizen. If he goes up there and makes statements designed to cost this principal his job, and he does it maliciously in bad faith, then under Mississippi law, he can be held liable. There's no reason to grant him qualified immunity because he's no different than any other citizen, and he's not exercising any discretionary function that the state assigns. Mr. Wade, if we conclude that the statement the DA made to the school board was a truthful statement, where is your case? Out the window, Your Honor. Based on the counsel correctly cited, that was my case. If that's a truthful statement, but I don't think it fits within the definition of valid, and of course, we don't know what all the, you know, to me, but we're talking about an indictment. The way indictments, I mean, I've never been a district attorney, but I think everybody knows the way indictments, a legitimate valid indictment's returned. Witnesses come up and testify to some criminal act in somebody's committee. They're not returned because a district attorney's mad because she's mad at the principal because he's disciplined her child, and then she's not a witness, but a district attorney tells a jury that because he takes the Fifth Amendment, that can somehow be accessory after the fact. Mr. Wade, if that indictment had not been dismissed, they could have sworn a jury and tried the case, couldn't they? Had the indictment not been dismissed . . . Dismissed, yeah, or not passed. Well, as it turns out, I guess the answer to that question would be yes, but that doesn't make . . . To me, it's not a valid indictment because it's not legitimate. I mean, it's not . . . I've never heard of a case, Your Honor, where the district attorney is the witness. She says that the guy's taken the Fifth Amendment, and the basis for an accessory after the fact is that you helped the criminal because you took the Fifth Amendment after I warned you you might be prosecuted. To me, that's not a valid indictment. But we're at the motion to dismiss stage, and we don't know what else is going to come out that she may have told the superintendent. You know, that's all that we understand that we know about, but we don't know what, if the court lets this case go forward, what all she told the superintendent and the board to get him fired. Is it fair to say you agree that the Fifth Amendment, right against self-incrimination, applies to criminal cases? Right, so in other words, your Fifth Amendment theory is really just tied into your valid indictment theory. Your Honor, I'm so apologetic because I'm hard of hearing, but I think I understood the substance of what Your Honor said. Is Your Honor referring to . . . they cited a Fifth Circuit case that said the Fifth Amendment didn't apply to some motorist that was out on the highway and refused to talk to the police? I'm really just asking you to confirm you agree the Fifth Amendment applies to criminal cases. It does apply to criminal cases, yes, Your Honor. People can talk about negative inferences outside of a criminal case. I didn't understand what Your Honor said. Can I talk publicly about somebody pleading the Fifth, not using it to try to get them in prison, but just commenting on them in private or in public? If I understood what Your Honor said, can you just make some comment that some . . . Can the press say, oh, this person might be guilty? After all, they pled the Fifth. Say, let me think about that. I guess the press would be a state actor, so that may not work. If somebody just out in public makes a statement, this person must be guilty because they took the Fifth Amendment, I suppose that would be a . . . you know, that . . . I mean, if the district attorney just out in public is talking to some member of the public and just says, well, I think he's guilty because he took the Fifth Amendment . . . Is that a violation of the Fifth Amendment? That wouldn't be a violation. So this is really just . . . this is your way of getting to the validity of the indictment. That's your point? No, sir, I don't think that's true. The Supreme Court case I cited, it's cited on page 6 of the brief. I think it's just directly on point. Gardner v. Broderick. The square holding is that a state may not discharge an employee for the sole reason of his refusal to waive his Fifth Amendment rights. If a state can't discharge an employee because he . . . In this case, he took the Fifth in a grand jury. If the state can't discharge an employee because he exercised his Fifth Amendment rights to me it follows that the state can't go to the employer and get an employee fired because he can't put a penalty on exercise of Fifth Amendment rights. The case they've cited, there is a Fifth Circuit case and it's difficult to reconcile with this United States Supreme Court case. But he was talking about a motorist out on the highway who just wouldn't say anything when they were asking him questions and he sued, claiming that was a Fifth Amendment violation and this court said otherwise. But that case, Your Honor, has to be reconciled with this Gardner case that I've cited. And the square holding is that if you go before a grand jury or in this case a hearing and you invoke the Fifth Amendment then the state can't fire you for that and that's exactly what the district attorney caused to be done. She caused him to be fired. All right, Mr. Williams. Thank you, Your Honor. Always a pleasure to see both of you here.